**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| PERSONALIZED MEDIA COMMUNICATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HISENSE CO. LTD.; HISENSE ELECTRIC CO., LTD.; AND GUIYANG HISENSE ELECTRONICS CO., LTD., <br><br> Defendants. | Civil Action No.: 2:17-cv-437-JRG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS HISENSE CO., LTD.'S AND GUIYANG HISENSE ELECTRONICS CO., LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

I. INTRODUCTION ............................................................................................... 1

II. STATEMENT OF FACTS ................................................................................... 1

III. AUTHORITY ...................................................................................................... 4

IV. ANALYSIS .......................................................................................................... 5

A. Defendants Operate as Part of a Chain that Purposefully Avails Itself of the United States and, Specifically, Texas ................................................................................................ 5

    1. Hisense Co. ............................................................................................. 6

    2. Guiyang Hisense ..................................................................................... 9

B. The Court Has Personal Jurisdiction Because Defendants Operate as a Single Entity .... 11

C. Exercising Jurisdiction Over Movants Would Not Be Unfair or Unreasonable............... 13

D. Jurisdictional Discovery................................................................................................... 14

V. CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Type Culture Collection, Inc. v. Coleman*,
  83 S.W.3d 801............................................................................................................4

*Autogenomics Inc. v. Oxford Gene Tech. Ltd.*
  566 F.3d 1012 (Fed. Cir. 2009)....................................................................................15

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994)............................................................................6, 8, 14

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)......................................................................................................7

*Celgard, LLC v. SK Innovation Co.*,
  792 F.3d 1373 (Fed. Cir. 2015).........................................................................6, 11, 12

*Dainippon Screen Mfg. Co. v. CFMT, Inc.*,
  142 F.3d 1266 (Fed. Cir. 1998)...................................................................................13

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
  No. 2016-1772, 2018 WL 2187726 (Fed. Cir. May 14, 2018) ...................................... *passim*

*N. Am. Philips Corp. v. Am. Vending Sales, Inc.*,
  35 F.3d 1576 (Fed. Cir. 1994)......................................................................................14

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
  626 F.3d 1222 (Fed. Cir. 2010)...........................................................................6, 8, 10, 15

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
  253 F.3d 865 (5th Cir. 2001) .......................................................................................11

*Rates Tech. Inc. v. Nortel Networks Corp.*,
  399 F.3d 1302 (Fed. Cir. 2005) (cited at Mot. )............................................................6

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
  148 F.3d 1355 (Fed. Cir. 1998).....................................................................................7

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
  563 F.3d 1285 (Fed. Cir. 2009)....................................................................................14

*Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*
  395 F.3d 1275 (Fed. Cir. 2005).....................................................................................9

5852735v1/015533

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*,
    517 F.3d 235 (5th Cir. 2008) ................................................................................................15

*Zoch v. Daimler*,
    No. 17-cv-578, 2017 WL 2903264 (E.D. Tex. May 16, 2017) ...............................................11

**Other Authorities**

Rule 4(k)(2)......................................................................................................................................4

## I.  INTRODUCTION

Defendants Hisense Co., Ltd ("Hisense Co."), Hisense Electric Co., Ltd. or Qingdao Hisense Electronics Co., Ltd.[1] ("Qingdao Hisense"), and Guiyang Hisense Electric Company, Ltd. ("Guiyang Hisense") consistently refer to themselves in publicly available documents as single unit --"Hisense," or the "Hisense Group" – thus confirming their interrelatedness, but obfuscating their particular roles in the distribution chain of Infringing Products. Now Hisense Co. and Guiyang Hisense ("Movants"), seize upon that opacity to avoid being called to answer for the distribution of their infringing products in the United States and Texas, while offering no clarification regarding Hisense's corporate structure or the distribution chain. That is not the law.

Movants cannot evade liability based on bare assertions that they are not physically present in the United States, or that they honor basic corporate formalities. As set forth below, Plaintiff's jurisdictional allegations, and the publicly available information support the exercise of personal jurisdiction over Movants under a "stream of commerce" and/or an "agency/alter-ego" theory. Nothing in Movants' conclusory affidavits undercuts a finding of jurisdiction. At the very least, jurisdictional discovery is warranted to give Plaintiff Personalize Media Communications, LLC ("PMC") access to facts uniquely within Defendants' custody.

## II.  STATEMENT OF FACTS

Three defendants remain in this case: Hisense Co., Qingdao Hisense, and Guiyang Hisense.[2]  All three companies are organized under the laws of China, with their principal places

---

[1] Defendants have represented to Plaintiff that Hisense Electric Company's correct legal name is Qingdao Hisense Electronics Co., Ltd. Dkt. 36 at 1.

[2] Four other Hisense entities were also originally named in the FAC, Qingdao Hisense Electric Co., Ltd., Liaoning Hisense Electronics Co., Ltd., Guangdong Hisense Multimedia Co., Ltd., and Zibo Hisense Electronics Co., Ltd. (together, the "Dismissed Parties"). However, on May 17, 2018, the parties made a joint motion to dismiss these entities on the grounds that they are no longer in operation. Dkt. 36. The Court granted that motion. Dkt. 40.

of business in China. First Amended Complaint ("FAC") ¶¶ 3, 4, 8. Non-movant Qingdao Hisense is a wholly-owned subsidiary of Movant Hisense Co. and does not contest personal jurisdiction in Texas (and, as such, this Motion is not case dispositive). *Id.* ¶ 4; Motion to Dismiss ("Mot.") at 10.  Movant Guiyang Hisense is a subsidiary of Qingdao Hisense.[3]

PMC alleges that Defendants "are an interrelated group of companies which together comprise one of the world's leading manufacturers of televisions and one of the leading sellers of televisions in the United States." *Id.* ¶ 10. Defendants "are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the accused devices… in the United States." *Id.* ¶ 14. Further, "Defendants operate as a unitary business venture and are jointly and severally liable for patent infringement relating to the televisions made, used, imported, offered for sale, sold, or used in the United States by any one or combination of them." *Id.* ¶ 15. PMC alleges that "the Hisense Defendants have committed and continue to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and sales via retail and wholesale stores, and/or inducing others to commit acts of patent infringement in Texas." *Id.* ¶ 12.

Defendants were not chosen at random – they were identified based on publicly available information as entities that "make[], use[], offer[] to sell, and/or sell[] in the United States, and/or import[] into the Unites States, products made in accordance with the Patents-in-Suit, including, but not limited to, digital televisions ("Hisense Digital Televisions" [or, "Infringing Products"])." *Id.* ¶ 34.

---

[3] *See* https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=234739335.

The precise nature of the interrelatedness of the Hisense entities is solely in the custody of Defendants, but the limited publicly-available facts support the contention that each Defendant is involved in manufacturing, advertising, marketing, selling, exporting, and/or updating Infringing Products sold in the United States and, specifically, Texas:

- The 2017 English user manual for accused television 65H8C (the "2017 User Manual") is copyrighted by Movant Hisense Co.  The manual states, "all material in this User Manual is the property of Hisense Company Ltd. and its subsidiaries, and *is protected under US… copyright and/or intellectual property laws.*"  <u>Exhibit A</u> at 1.

- The 2017 User Manual states: "We will provide software updates to continuously enhance your TV and correct any issues that may impact your experience; therefore, we recommend that you keep your TV connected to the Internet to receive updates when they are available."  *Id.* at 30.

- Non-movant Qingdao Hisense and Movants have significant overlap in management.  Hisense's 2016 Annual Report lists:

  - Liu Hong Xin as the "director and president of [Hisense Co.]., the chairman of the board of directors of Hisense Electric Co., Ltd. and a director of the Company since October 2015."[4] <u>Exhibit B</u> at 40. He was also the General Manager of Movant Guiyang Hisense.  *Id.*

  - Lin An as "a director and vice-president of Hisense Company Limited, a director of Hisense Electric Co., Ltd. and a director of the Company since December 2009."  *Id.*

  - Dai Hui Zhong as "a director of Hisense Company Limited, Hisense Electric Co., Ltd. and the Company since March 2017."  *Id.*

- A Hisense Interim June 30, 2017 Report (the "2017 Report") refers to Movant Hisense Co. as Hisense Group.  *See* <u>Exhibit C</u> at 148.  The document identifies Hisense Group as the "Ultimate Holding Shareholder."  *Id.* at 107.

- The 2017 Report states that "the Company benefitted from the favorable opportunity of sports marketing development by Hisense Group and accelerated the process of internationalization so as to continuously promote the strategy of internationalization of its own brands." *Id.* at 139.

---

[4] The "Company" is defined as Hisense Kelon Electrical Holdings Company Limited. <u>Ex. B</u> at 4.

- A 2014 Presentation regarding "Hisense" (without qualification) lists the United States as a country "of Exported Products." Exhibit D at 22.

- A July 31, 2015 press release stated that Hisense Group "will be purchasing [from Sharp] all its channel resources in both North and South American regions [and] taking over Sharp's TV business in these regions…. The acquisition will help Hisense gain an upper hand in both North and South America with the extended market capacity." Exhibit E at 1.

- Guiyang Hisense "manufactures *and distributes* home audio-video products. The Company produces color televisions, digital televisions, and related components." Exhibit F (https://www.bloomberg.com/profiles/companies/IUIYAZ:CH-guiyang-hisense-electronics-co-ltd).

Defendants' Motion offers no evidence -- other than conclusory denials – to refute Plaintiff's jurisdictional allegations, supported by the limited publicly available information.

## III. AUTHORITY

Rule 4(k)(2) allows "a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, No. 2016-1772, 2018 WL 2187726, at *2 (Fed. Cir. May 14, 2018) (citation omitted). Movants dispute the third prong of this inquiry – due process.

The due process analysis "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id.* at *2 (citation omitted). In other words, "Rule 4(k)(2) … allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Id.* Its limitations are coterminous with the Texas long-arm statute, which reaches as "far as the federal constitutional requirements of due process will allow." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801. 806 (Tex. 2002); *see also* Mot. at 5.

In determining whether exercise of specific jurisdiction comports with due process, the Federal Circuit applies a three prong test: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *M-I Drilling Fluids UK Ltd*, 2018 WL 2187726, at *2

Where, as here, a "district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Id.* (quotation omitted).  "Moreover, in the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.* (alterations and quotations omitted).

## IV. ANALYSIS

### A.  Defendants Operate as Part of a Chain that Purposefully Avails Itself of the United States and, Specifically, Texas

Movants Hisense Co. and Guiyang Hisense argue that specific jurisdiction is lacking "because they do not manufacture, market, sell [in the United States], or import any of the television products at issue in this case into Texas or anywhere else in the United States." Ex.1 ¶¶ 8-15 (Hisense Co.); Ex. 2 ¶¶ 8-15 (Guiyang Hisense).  This argument hinges on the faulty premise that lack of physical presence or direct importation into the United States ends the inquiry.  *See* Mot. at 3-4.  Not so. Even where a "foreign manufacturer had no license for doing business in the forum, no assets, employees, or agents for service of process in the forum, and no direct sales in the forum … exercise of jurisdiction [is] proper [where] the manufacturer purposefully shipped products through an established distribution channel with the expectation

that those products would be sold in the forum." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1233 (Fed. Cir. 2010); *accord Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) ("The allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction.")

Movants do not dispute that they are part of the same distribution chain for the Infringing Products as corporate family member Qingdao Hisense, whose connections to the United States are uncontested.[5] Movants also do not dispute that Infringing Products manufactured in China are exported to the United States, nor could they. *See* Ex. C (listing U.S. as a region of exported products). Thus, even accepting *Movants'* conclusory allegations as true – the opposite of what the Court must do on a motion to dismiss – PMC has sufficiently alleged facts supporting personal jurisdiction.

### 1. Hisense Co.

Even without connecting Hisense Co. to the activities of its subsidiaries and related entities there are sufficient allegations that Hisense Co. "purposefully directed its activities at the United States,"[6] *M-I Drilling Fluids UK,* 2018 WL 2187726, at *3, *and* "purposeful[ly] avail[ed

---

[5] Notably, in contrast to cases cited by Movants, Movants do not dispute that they "made, used, sold, or offered to sell the accused products," – only that they did so while in the United States. *Cf. Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1306 (Fed. Cir. 2005) (dismissing where "*despite discovery*" there was no evidence that the entity made, used, sold or offered to sell the accused products, but rather was a holding company) (cited at Mot. at 10).

[6] The Federal Circuit has observed that "neither [the Federal Circuit], nor the Supreme Court, has decided whether stream-of-commerce jurisdiction requires merely placing goods into the stream of commerce with the expectation that they would be purchased in the forum state, or if "something more" is required, i.e., the purposeful direction of activities toward the forum." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1380 (Fed. Cir. 2015).  The Court need to

itself] of the *benefits and protections of* … the forum state." *Burger King Corp. v.*
*Rudzewicz*, 471 U.S. 462, 474 (1985).   The 2017 User Manual for one Infringing Product
provides clear and uncontroverted evidence that Hisense Co. knowingly and intentionally placed
its Infringing Products in the stream of commerce in the United States, and availed itself of the
protection of the laws of the United States, including "intellectual property laws." Ex. A at 1.
Hisense Co.'s invocation of United States intellectual property law flatly contradicts Movants'
conclusory assertion that "it is not foreseeable to Hisense Co. that it would be sued in Texas."
Mot. at 9.

Hisense Group does not limit its conduct of United States business to its overseas U.S.
entity. Far from it. Publicly available documents confirm that Hisense Group "exports" its
products to the United States. Ex. D at 22; *see also* Ex. C at 148 (referring to Hisense Co. as
Hisense Group).   In addition, the English 2017 User Manual makes clear that Hisense Co. or
some entity subject to the control of Hisense Co. will "provide software updates to *continuously*
enhance your TV." *Id.* at 30.

The Federal Circuit has clarified that "even a single contact with a forum state may
suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim" of
patent infringement. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359
(Fed. Cir. 1998).   The "uncontroverted assertions" regarding Hisense Co.'s connection to the
United States leave little doubt that Hisense Co. "acting in consort [with its subsidiary Defendant
Qingdao Electronics, among others], placed the [Infringing Products] in the stream of commerce,
they knew the likely destination of the products, and their conduct and connections with the

reach that question here – certainly not as to Hisense Co. – as the evidence that Hisense has
expressly targeted the United States is ample.

forum state [-- invoking the protection of U.S. law, and continuously providing software updates --] were such that they should reasonably have anticipated being brought into court [in Texas]." *Beverly Hills Fan Co.*, 21 F.3d at 1566 (finding jurisdiction comported with due process under these circumstances).  This is so even if Movant "has no assets or employees …; no agent for the service of process …; [no] license to do business …; and has not directly shipped the accused [product] into the forum state." *Id.* at 1560.

In addition to Hisense Co.'s individual contacts, it has overlapping management with Qingdao Hisense, which does not dispute personal jurisdiction. Since 2015, Hisense Co.'s "director and president" Liu Hong Xin is also the chairman of the board of directors and a direct of Qingdao Hisense." Ex. B at 40.  Hisense Co. and Qingdao Hisense share at least two other overlapping directors.  *See id.* The Federal Circuit has routinely found allegations of overlapping management relevant to establishing personal jurisdiction over foreign companies. *Nuance Commc'ns, Inc.*, 626 F.3d at 1229 (Fed. Cir. 2010) (finding relevant to the stream of commerce inquiry that "[t]he website describes a single "Global Management Team" for the Abbyy companies").

Finally, the Hisense Group has also manifested a clear intent to conquer the United States market, by its foreign entities (Defendants) exporting products and providing software updates. A July 31, 2015 press release stated Hisense Group's intent to "gain an upper hand in both North and South America with the extended market capacity." Ex. E at 1. This is further evidence that the exercise of jurisdiction comports with due process. *See Nuance Commc'ns, Inc.*, 626 F.3d at 1229 (citing evidence of intent to become active in U.S.). These statements of intent to impact the United States undercut Movants' analogy to cases where the allegations are simply that "defendants can foresee that [an] article will be circulated and have an effect in the forum

8

state….." Mot. at 9-10 (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330

(Fed. Cir. 2008)). Finally, although website presence is not necessary to establish jurisdiction

over Hisense Co., Movants' assertion that Hisense's presence on websites in the United States

cannot bolster jurisdiction is a bridge too far. *See* Mot. at 10. Movants' own case, *Trintec Indus.,*

*Inc. v. Pedre Promotional Prod., Inc.*, recognizes that websites "would support jurisdiction … if

[Defendant] had some responsibility for the third party's advertising of ... products on … site."

395 F.3d 1275, 1283 (Fed. Cir. 2005). Hisense does not contend that it sells to some third party

outside of the United States and has no knowledge or control of whether its products end up on

U.S. websites. It cannot be said that the sale of Hisense Co.'s Infringing Products on these

websites (the fact of which Movant's conspicuously do not contest, *see* Mot. at 10) was

unforeseen or unintentional.

It is not a close call whether the allegations support the exercise of jurisdiction over

Hisense Co. The motion should be denied or, at a bare minimum, jurisdictional discovery should

be granted.[7]

## 2. Guiyang Hisense

There is admittedly less publicly available evidence regarding Guiyang Hisense's, the

subsidiary of non-movant Qingdao Electronics, availment of the United States forum. That is

because Guiyang Hisense, like other named affiliates of Hisense Co., are subsumed in public

documents under the umbrella of the "Hisense Group." However, publicly available information

---

[7] The Federal Circuit in *Trintec* did not dismiss the case – it remanded for further findings, including whether jurisdictional discovery was appropriate. 395 F.3d at 1283 ("Although the record suggests that Trintec made a prima facie showing of personal jurisdiction in the district court, that evidence is sparse and contains gaps sufficient to cause us to conclude that additional evidence is needed before a decision on jurisdiction properly can be made. We shall, therefore, vacate the judgment of the district court and remand the case to that court for further proceedings. If the district court concludes that the existing record is insufficient to support personal jurisdiction, *Trintec is entitled to jurisdictional discovery*.") (emphasis added)

9

confirms that Guiyang Hisense "manufactures *and distributes* home audio-video products. The Company produces color televisions, digital televisions, and related components." Ex. F (https://www.bloomberg.com/profiles/companies/IUIYAZ:CH-guiyang-hisense-electronics-co-ltd). And Guiyang Hisense too shares or shared overlapping management with Hisense Co. and Qingdao Electronics. Ex. A at 40 (Liu Hong Xin was a General Manager of Guiyang Hisense). The allegations that Guiyang Hisense is part of a distribution chain that purposefully avails itself of the privileges and protections of the United States are not conclusory – they are simply limited by Defendants' own lack of transparency.

Importantly, PMC's allegations regarding Guiyang Hisense are uncontroverted. Movants' motion sheds no light on what Guiyang Hisense's role in the distribution chain *is*; it simply offers equally conclusory assertions regarding what Guiyang Hisense's role isn't – a direct presence in the United States. *See* Mot. at 13. Such assertions, even if true, would not render the exercise of jurisdiction unconstitutional. Notably Defendants' affidavit does not deny that Guiyang Hisense places products in an "established distribution channel with the expectation that those products would be sold in the forum." *Nuance Commc'ns, Inc*, 626 F.3d at 1233. Movants cite no authority, certainly not in the patent context,[8] for the proposition that a member of a distribution chain may avoid jurisdiction *and* jurisdictional discovery by starving the Plaintiff of the information necessary to substantiate its "information and belief" pleadings, and providing

---

[8]   The Federal Circuit recently recognized a distinction between the jurisdictional inquiry in patent infringement cases versus other cases.   *See M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, No. 2016-1772, 2018 WL 2187726, at *3 (Fed. Cir. May 14, 2018) ("Our subject matter jurisdiction over this appeal is grounded in the commercial tort of patent infringement, not a contract dispute between the parties. In patent infringement disputes, our precedent makes clear that "the jurisdictional inquiry is *relatively easily* discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum.")

no concrete evidence refuting those allegations. *See* Mot. at 9.[9] The cases Movants cite where courts have found jurisdictional allegations insufficient have involved far more detailed declarations by Defendants, asserting, for example, that Defendant "did not know the specific final destination or the ultimate place of sale of the smart vehicles … and it did not enter into any contracts with the vehicle manufacturer, or any other entity, regarding the shipment, distribution, or sale of the vehicles…." *Zoch v. Daimler, AG,* No. 6:16-CV-00057-RWS, 2017 WL 2903264, at *6 (E.D. Tex. May 16, 2017). Of course, Guiyang Hisense cannot (and has not) plead this sort of ignorance, given its overlap in management with Qingdao Electronics and Hisense Co.

In sum, PMC has plausibly alleged that Guiyang "purposefully directed its activities at the United States." *M-I Drilling Fluids UK,* 2018 WL 2187726, at *3. Movants have failed to refute those allegations. The motion should be denied as to Guiyang or, for the reasons set forth in Part IV.D, *infra*, the Court should grant jurisdictional discovery.

### B. The Court Has Personal Jurisdiction Because Defendants Operate as a Single Entity

Even if the Court finds that the allegations of Movants' individual contacts with the United States are insufficient to establish specific jurisdiction, the allegations regarding Defendants' corporate structure are sufficient to permit exercise of specific jurisdiction under an agency or alter-ego theory. *See Celgard, LLC v. SK Innovation Co*., 792 F.3d 1373, 1379 (Fed.

---

[9] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868–69 (5th Cir. 2001) held that allegations "'on information and belief' that Appellee knew Appellants are Texas residents and knew its actions would intentionally cause harm to Appellants in Texas," with no other evidence, were insufficient). *Zoch v. Daimler*, No. 17-cv-578, 2017 WL 2903264, at *6 (E.D. Tex. May 16, 2017), *report and recommendation adopted*, Dkt. No. 161 (E.D. Tex. July 5, 2017) ("Plaintiff does not point to any facts that would indicate JCMM had knowledge that component parts it supplied would end up in the forum state, or even that it would be foreseeable that those component parts would end up in Texas. Daimler sold the vehicle to be imported to the United States without the specific or general knowledge of JCMM.")

11

Cir. 2015) ("In order to establish jurisdiction under the agency theory, the plaintiff must show that the defendant exercises control over the activities of the third-party."). Evidence of "common control of [corporate entities], or any flow of profits from the former to the latter" go to establishing specific jurisdiction under this theory. *Id.* at 1380 (finding no such evidence).

PMC alleges that Defendants "are an interrelated group of companies which together comprise … one of the leading sellers of televisions in the United States," FAC ¶ 10; "are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the accused devices… in the United States," *id.* ¶ 14; and "operate as a unitary business venture." The publicly-available information reveals clear overlap in management between Defendants, with Non-Movant Qingdao Electronics at the center of it. In addition to the overlapping management, the 2017 Report refers to movant Hisense Co. as Hisense Group – the catchall for Hisense's unitary business venture, including its United States activity. *See* Ex. C at 148. The document identifies Hisense Group as the "Ultimate Holding Shareholder," suggesting that it controls the other entities. *Id.* at 107.

Movants provide no evidence refuting these allegations. Instead Movants ask Plaintiff and this Court to take their word for it that Movants and Qingdao Hisense "are separate and distinct corporations that maintain separate, lawful corporate identities." Mot. Ex. 1 ¶¶ 17-19 (Hisense Co.); Ex. 2 ¶¶ 17-19 (Guiyang Hisense). But the Court need not find the corporate entities illegitimate in order to exercise specific jurisdiction based on the ties between the corporate entities. The Federal Circuit has observed that "[w]hile a patent holding subsidiary is a legitimate creature … it cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment

12

jurisdiction." *Dainippon Screen Mfg. Co. v. CFMT, Inc.,* 142 F.3d 1266, 1271 (Fed. Cir. 1998). That is precisely what Hisense Co. seeks to accomplish here, by hiding behind Qingdao Electronics and any other entities openly operating in the United States.

As set forth in Part IV.D, if the Court has any doubt as to the interrelatedness of the Defendants, it should authorize jurisdictional discovery.

### C.  Exercising Jurisdiction Over Movants Would Not Be Unfair or Unreasonable.

Because Movants' activities were purposefully directed at the United States and the claim of patent infringement arises out of those contacts, the burden is on Movants "to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *M-I Drilling Fluids UK Ltd.*, 2018 WL 2187726, at *4.  This is a five part inquiry, on which Movants bear the burden, that examines: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Id.* Contrary to Movants' suggestion that the "fairness" inquiry offers sweeping protections to foreign defendants, *see* Mot. at 11, the Federal Circuit has made clear that, where the first two prongs are met, it is the "rare case" where "fair play and substantial justice [will] defeat the reasonableness of a U.S. court exercising personal jurisdiction over a defendant."  *Id.*, at *5 (citations omitted).

This is far from that rare case. Movants offer nothing but conclusory recitations of the factors premised on assumptions that are far from established: Defendants are Chinese corporations so they should not be required to answer in Texas; Texas has no interest in adjudicating a patent dispute against a Chinse corporation with no relevant contacts, despite the

13

undisputed facts that Defendants' products are sold in the United States; and, unremarkably, that PMC's interest in the case is financial gain. Mot. at 12. These bare allegations confirm that this case is the prototypical patent infringement case against foreign entities who seek to profit from sales in the United States, *see* Ex. D, and invoke the protection of U.S. law, Ex. A, but avoid being called into court by a United States patent holder. *M-I Drilling Fluids UK Ltd.*, 2018 WL 2187726, at *4 (jurisdiction not unreasonable or unfair where burden of company with no U.S. presence being called into Court significant but that progress has made defense in U.S. less burdensome and outweighed by the interest of a patent holder in obtaining relief, and the United States' interest in enforcing federal patent law) (discussing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir. 2009)); *see also N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1580 (Fed. Cir. 1994) (noting that the forum "clearly has an interest in prohibiting the importation of infringing articles into its territory"); *Beverly Hills Fan*, 21 F.3d at 1568 (holding that the forum's interest in discouraging injuries within its territory extends to patent infringement actions).

In short, Movants raise only generic and conclusory reasons why the exercise of jurisdiction would be unfair and unreasonable – this is far from the "rare case" where a Defendant carries his burden of overcoming jurisdiction based on notions of fair play.

### D.  Jurisdictional Discovery

Movants' assertion that PMC "offers no support for [its jurisdictional allegations]," Mot. at 2, is an attempt to hide behind their own opaque corporate structure. It is also wrong as a factual matter – as set forth above, PMC does have evidentiary support. Accordingly, the motion to dismiss should be denied outright. If, however, the Court disagrees that the allegations in the Complaint and documentary evidence are sufficient, it should grant jurisdictional discovery.

14

The law of the regional circuit determines whether a court should order discovery. *Autogenomics Inc. v. Oxford Gene Tech. Ltd.* 566 F.3d 1012, 1021–22 (Fed. Cir. 2009). The Fifth Circuit has held that where, as here, "disputes the factual bases for jurisdiction … the court may … any combination of the recognized methods of discovery to help it resolve the jurisdictional issue. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.,* 517 F.3d 235, 241 (5th Cir. 2008).

Here, PMC would use interrogatories, requests for documents and, if necessary, depositions to ascertain: 1) the specific roles Movants play in the distribution chain of Infringing Products; and 2) the scope of interrelatedness and disregard of corporate formalities between Defendants and other related entities. The evidence PMC has obtained from publicly available materials ensure that "jurisdictional discovery is not based on a mere hunch." *Nuance Commc'ns, Inc.*, 626 F.3d at 1236 (citation omitted) (citing evidence that defendants "controls the actions of its subsidiaries" and wanted to conquer the U.S. market and holding that even if "the proffered documents [are] insufficient in themselves to establish a prima face case, this incomplete record nevertheless supports the need for additional discovery ….").

Moreover, granting jurisdictional discovery would not simply breathe life into an otherwise dismissible (as the Defendants see it) case. Defendants admit that there is <u>one</u> proper defendant in this litigation.  Accordingly, there is going to be a lawsuit, with merits discovery, anyway.  If the Court is not inclined to reject the Defendants' jurisdictional arguments now, allowing jurisdictional discovery will therefore not extend the life of this litigation as a whole.

## V.  CONCLUSION

Movants' motion should be denied outright.  At the very least, the Court should permit jurisdictional discovery and make its decision on a fuller record.

5852735v1/015533

Dated:  June 6, 2018

Respectfully submitted,

By: *s/Elisha B. Barron*_____
  Elisha B. Barron
  New York State Bar No. 5036850
  SUSMAN GODFREY L.L.P.
  1301 Avenue of the Americas, 32nd Fl.
  New York, NY 10019-6023
  Telephone: (212) 729-2013
  ebarron@susmangodfrey.com

  S. Calvin Capshaw
  Texas Bar No. 03783900
  Elizabeth L. DeRieux
  Texas Bar No. 05770585
  CAPSHAW DERIEUX LLP
  114 E. Commerce Avenue
  Gladewater, TX 75647
  Telephone: (903) 845-5770
  ccapshaw@capshawlaw.com
  ederieux@capshawlaw.com

  Arun Subramanian
  New York State Bar No. 4611869
  SUSMAN GODFREY L.L.P.
  1301 Avenue of the Americas, 32nd Fl.
  New York, NY 10019-6023
  Telephone: (212) 471-8346
  asubramanian@susmangodfrey.com

  Joseph S. Grinstein
  Texas State Bar No. 24002188
  SUSMAN GODFREY L.L.P.
  1000 Louisiana, Suite 5100
  Houston, TX 77002-5096
  Telephone: (713) 653-7820
  jgrinstein@susmangodfrey.com

  Meng Xi
  California State Bar No. 280099
  SUSMAN GODFREY L.L.P.
  1901 Avenue of the Stars, Suite 950
  Los Angeles, CA 90067-6029
  Telephone: (310) 789-3158
  mxi@susmangodfrey.com

16

Dmitry Kheyfits
New York State Bar No. 4743795
KHEYFITS P.C.
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
Telephone: (212) 203-5399
dkheyfits@kheyfits.com

*Attorneys for Personalized Media
Communications, LLC*

## CERTIFICATE OF SERVICE

I certify that on June 6, 2018, a copy of the foregoing document was served on the parties to this action by electronically filing true and correct copies with the Clerk of the Court using the CM/ECF system which automatically sent notification by e-mail of such filing to the counsel of record.

 *s/ Elisha B. Barron*
Elisha B. Barron